# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **DAVID FOWLER,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | **CIVIL ACTION NO. 15-cv-01421** |
| **C3 RACING d/b/a NEW ENGLAND** | § | |
| **CLASSIC CAR COMPANY, MARC** | § | |
| **EVANS, AND GEORGE SQUIRE** | § | |
| *Defendants* | § | |

### PLAINTIFF FOWLER'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND FOWLER'S MOTION TO STRIKE

COMES NOW Plaintiff **DAVID FOWLER** ("Fowler"), and files this response to C3 Racing's, and Marc Evans' Motion to Dismiss along with a Motion to Strike Evans' affidavit testimony.  Since the Court has personal jurisdiction over this case, Fowler requests that the Court deny C3 Racing's and Evans' Motion to Dismiss and grant Fowler's Motion to Strike.  In support thereof, pursuant to the Federal Rules of Civil Procedure 12(b)(2), Plaintiff would respectfully show this Honorable Court the following:

**INDEX OF AUTHORITIES** ........................................................................... iii

**SUMMARY OF THE CASE** .............................................................................1

**ISSUE PRESENTED** .......................................................................................3

**ARGUMENTS & AUTHORITIES** ..................................................................3

  STANDARD OF REVIEW .................................................................................3

  EVANS AND C3 HAVE AVAILED THEMSELVES OF THE LAWS AND PRIVILEGES OF
  TEXAS ............................................................................................................4

    *Specific Jurisdiction* .................................................................................6

    *General Jurisdiction* .................................................................................9

  OBJECTIONS TO DECLARATIONS OF EVANS ..............................................10

# Index of Authorities

## *Cases*

*Bandy v. First State Bank, Overton, Tex.,*
    835 S.W.2d 609 (Tex. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bullion v. Gillespie,*
    895 F.2d 213 (5th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) . . . . . . . . . . . . . . . . . . 6, 7

*Cogswell v. American Transit Ins. Co.,*
    923 A.2d 638, 282 Conn. 505 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Dalton v. R & W Marine,*
    897 F.2d 1359 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*E.E.O.C. v. Air Liquide USA LLC,*
    692 F.Supp.2d 658 (S.D.Tex. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Felch v. Transportes Lar-Mex SA DE CV,*
    92 F.3d 320 (5th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Gardemal v. Westin Hotel Co.,*
    186 F.3d 588 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C.,*
    815 S.W.2d 223 (Tex. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) . . . . . . . . . . . . . . . . . . . 9

*Holt Oil & Gas Corp. v. Harvey,*
    801 F.2d 773 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Humphreys v. Caldwell,*
    888 S.W.2d 469 (Tex. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re E.I. DuPont de Nemours and Co.,*
     136 S.W.3d 218 (Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Int'l Shoe Co. v. Wash.,*
     326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Johnston v. Multidata Sys. Int'l Corp.,*
     523 F.3d 602 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*Jones v. Petty-Ray Geophysical, Geosource, Inc.,*
     954 F.2d 1061 (5th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kerlin v. Arias,*
     274 S.W.3d 666 (Tex. 2008) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Latshaw v. Johnston,*
     167 F.3d 208 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Laykin v. McFall,*
     830 S.W.2d 266 (Tex.App – Amarillo 1992, orig. proceeding) . . . . . . . . . . . . . 7

*McFadin v. Gerber,*
     587 F.3d. 753 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Michiana Easy Livin' Country, Inc. v. Holten,*
     168 S.W.3d 777 (Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Moki Mac River Expeditions v. Drugg,*
     221 S.W.3d 569 (Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

*Mylonakis v. M/T GEORGIOS M.,*
     909 F.Supp.2d 691 (S.D. Tex. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Nuovo Pignone, SpA v. STORMAN ASIA M/V,*
     310 F.3d 374 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pervasive Software Inc. v. Lexware GmbH & Co. KG,*
     688 F.3d 214 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Peters v. Lincoln Elec. Co.,*
    285 F.3d 456 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Radio Station KSCS v. Jennings,*
    750 S.W.2d 760 (Tex. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ryland Group, Inc. v. Hood,*
    924 S.W.2d 120 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Schlobohm v. Schapiro,*
    784 S.W.2d 355 (Tex. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Seiferth v. Helicopteros Atuneros, Inc.,*
    472 F.3d 266 (5th Cir.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Siskind v. Villa Found, for Educ, Inc.,*
    642 S.W.2d 434 (Tex. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Stuart v. Spademan,*
    772 F.2d 1185 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Tripp Village Joint Venture v. MBank Lincoln Centre, N.A.,*
    774 S.W.2d 746 (Tex.App – Dallas 1989, writ denied) . . . . . . . . . . . . . . . . . . . . 7

*Wilson v. Belin,*
    20 F.3d 644 (5th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

### Rules and Statutes

28 U.S.C. § 1746 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Connecticut General Statutes §1-34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Connecticut Practice Book §17-46 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

FED.R.CIV.P. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

FED.R.CIV.P. 56(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

TEX.CIV.PRAC.&REM. CODE §17.042 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

TEX.CIV.PRAC.&REM. CODE §17.043 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

TEX.R.CIV.P. 166a(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## SUMMARY OF THE CASE

1.      This is a case that grows out of Fowler's purchase of a Morgan Plus 4 ("Morgan") from C3 Racing ("C3") and Marc Evans ("Evans") in November 2007.

2.      The claims before this Court involve Evans' and C3's conduct in connection with the February 2015 sale and registration to Squire of Fowler's Morgan. The complaints before this Court have *nothing* to do with the original purchase and sale of the Morgan to Fowler by C3 and Evans.  However, in order to give the Court a better understanding of the history between the parties, a brief account of the 2007 transaction follows.

FOWLER'S 2007 PURCHASE OF THE MORGAN FROM EVANS AND C3

3.      Fowler purchased the Morgan from C3 or Evans in November 2007.  (Affidavit of Fowler ¶8, Exhibit A). Fowler wired $30,000 to Evans' personal bank account to consummate the purchase of the Morgan in November 2007.  (Affidavit of Fowler ¶9).

4.      After receiving delivery of the Morgan in Texas, Fowler asked Evans for the certificate of title to the Morgan. Unable to secure title and finding other problems with the Morgan, Fowler filed suit in Texas.  (Affidavit of Fowler ¶11-22).

5.      During the pendency of the Texas suit, Evans again promised to deliver the proper paperwork so that Fowler could title the Morgan in Texas. (Affidavit of Fowler ¶26). In exchange for that promise, Evans required that Fowler execute a new Retail Purchase Order and a Connecticut tax form CERT-125.  (Affidavit of Fowler ¶25, Exhibit B).

6.      Receiving no answer from C3 Racing in the Texas lawsuit and unable to resolve the dispute with Evans, Fowler obtained a default judgment against C3 on September 14, 2010.

7.      In December 2013, Fowler filed a complaint in Connecticut Superior Court asking that his Texas judgment be domesticated and in the alternative for breach of contract for failure to deliver the title to the Morgan.

8.      Fowler's judgment domestication claims are currently on appeal to the Connecticut Appellate Court after the trial court's rendition of a partial summary judgment and directed verdict in C3's favor.

THE FEBRUARY 2015 SALE OF FOWLER'S MORGAN TO SQUIRE

9.      In the Connecticut suit, Evans produced documents on the second day of trial showing that Fowler's Morgan was sold to George Squire in Machias, Maine for $2,000 by Evans or C3 Racing on February 12, 2015.  (Exhibit C, Affidavit of Fowler ¶29-30).

10.     Using a bill of sale drafted by Evans, Squire registered Fowler's Morgan with the Maine Bureau of Motor Vehicles.  (Exhibit C, Affidavit of Fowler ¶29-30).

11.     Those February 2015 acts by Evans, C3 Racing, and Squire are the subject of Fowler's suit in this Court for conversion, theft, slander of title, and declaratory actions with regards to the Morgan.

## ISSUE PRESENTED

12.     The sole issue is whether the Court has personal jurisdiction over defendants C3 Racing and Marc Evans with regards to the conversion, theft, and slander of title of the Morgan in February 2015.

## ARGUMENTS & AUTHORITIES

13.     In deciding personal jurisdiction over the defendants, the Court should consider whether C3 and Evans have availed themselves of the laws of Texas and whether this Court's exercise of jurisdiction will not offend traditional notions of fair play and substantial justice.

### I.     Standard of Review

14.     Federal Rule of Civil Procedure 12(b)(2) permits a court to dismiss a claim if the court does not have personal jurisdiction over the defendant.

Fed.R.Civ.P. 12(b)(2). "When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the district court's jurisdiction over the defendant." *Gardemal v. Westin Hotel Co.,* 186 F.3d 588, 592 (5th Cir. 1999).

15.     If the parties dispute essential facts relevant to personal jurisdiction, an evidentiary hearing may be necessary; however, where facts are not in dispute, a court may rule on the issue without conducting an evidentiary hearing, in which case, the plaintiff must present a *prima facie* case of jurisdiction. *See Felch v. Transportes Lar-Mex SA DE CV,* 92 F.3d 320, 326 (5th Cir.1996). When an evidentiary hearing is not held, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir.1994)(citing *Bullion v. Gillespie,* 895 F.2d 213, 217 (5th Cir.1990)).

## II.    Evans and C3 have availed themselves of the laws and privileges of Texas, hence this Court has personal jurisdiction over them.

16.     A federal court has personal jurisdiction over a nonresident defendant if the forum state's long-arm statute confers jurisdiction and if

jurisdiction is consistent with due process under the United States Constitution. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). In Texas, the long-arm statute permits personal jurisdiction to the fullest extent allowed by the Due Process Clause. *Id.*

17.     The Texas long-arm statute authorizes service of process on nonresidents "[i]n an action arising from a nonresident's business in this state." TEX.CIV.PRAC.&REM. CODE §17.043. In addition to other acts that may constitute doing business, a nonresident does business in Texas if the nonresident commits a tort in whole or in part in this state. TEX.CIV.PRAC.&REM. CODE §17.042. The Texas Supreme Court has stated that "the long-arm statute's broad doing-business language allows the statute to 'reach as far as the federal constitutional requirements of due process will allow.' " *Mylonakis v. M/T GEORGIOS M.*, 909 F.Supp.2d 691, 705 (S.D. Tex. 2012) (Citing *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex. 2007) (quoting *Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991))). *See also Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex. 1990) (holding that the limits of the Texas long-arm statute are coextensive with the limits of constitutional due process guarantees).

18.     The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant when that defendant has purposefully

availed himself of the benefits and protections of the forum state by establishing

"minimum contacts" with the forum state. *Latshaw v. Johnston*, 167 F.3d 208, 211

(5th Cir. 1999) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

19.     Minimum contacts are established with a state by a defendant

whose "conduct and connection" with that state are significant enough that the

defendant "should reasonably anticipate being haled into court" in that state.

*Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 379 (5th Cir. 2002)

(quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).  The

defendant must "purposely avail[] itself of the privilege of conducting activities

within the forum state, thus invoking the benefits and protections of its laws."  *Id.*

(quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. at 475).

### A.     *Specific Jurisdiction*

20.     Specific jurisdiction requires a plaintiff to show that: "(1) there

are sufficient (i.e., not 'random fortuitous or attenuated') pre-litigation connections

between the non-resident defendant and the forum; (2) the connection has been

purposefully established by the defendant; and (3) the plaintiff's cause of action

arises out of or is related to the defendant's forum contacts. *Pervasive Software*

*Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 222 (5th Cir. 2012) (citing 1

Robert C. Casad & William B. Richman, Jurisdiction in Civil Actions § 2-5, at 144

(3d ed.1998) (footnote citing cases omitted)); *see also McFadin v. Gerber,* 587

F.3d. 753, 759 (5th Cir. 2009); *Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266, 271 (5th Cir. 2006); *Jones v. Petty-Ray Geophysical, Geosource, Inc.,* 954 F.2d 1061, 1068 & n. 9 (5th Cir. 1992). Even a single contact can support specific jurisdiction if the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. at 475.

21.     The tort of conversion is defined as " 'the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights.' " *Pervasive Software Inc. v. Lexware GmbH & Co. KG,* 688 F.3d at 229 (citing *Bandy v. First State Bank, Overton, Tex.,* 835 S.W.2d 609, 622 (Tex. 1992) (quoting *Tripp Village Joint Venture v. MBank Lincoln Centre, N.A.,* 774 S.W.2d 746, 750 (Tex.App – Dallas 1989, writ denied)).

22.     In order to create personal jurisdiction under the Texas long-arm statute; the item must be in Texas when the conversion actually occurs. *Pervasive Software Inc. v. Lexware GmbH & Co. KG,* 688 F.3d at 230 (citing *Laykin v. McFall,* 830 S.W.2d 26, 269-70 (Tex.App – Amarillo 1992, orig. proceeding)).

23.     Here, it is undisputed that Fowler has physical possession of the Morgan in question and that he purchased it from Evans and C3 back in November 2007. (Affidavit of Fowler ¶8, 11). It is also undisputed that the Morgan has been

in Texas since Fowler took physical possession of it in November 2007.  (Affidavit of Fowler ¶28).

24.     Yet Evans and C3 purposely acted on their own accord to sell the Morgan – which has been located in Texas for over seven years – to George Squire in February 2015. That sale and registration was accomplished with the full knowledge that Evans and C3 had already sold the very same Morgan to Fowler in Texas back in 2007. Moreover, C3 and Evans clearly knew that the Morgan was warehoused in Texas and have no reason to believe that it is anywhere other than in Fowler's possession. That is because in December 2014, Evans and C3 deposed Fowler on that very issue.

25.     The purposeful act of selling the Morgan by Evans, and C3 to Squire, were done without any prompting by Fowler.  The torts of conversion, theft, and slander of title were all the result of unilateral acts of Evans, C3, and Squire who conspired to create a fictitious bill of sale with which Squire was then able to register Fowler's Morgan in Maine.  This transfer of ownership of the Morgan to Squire through Maine's vehicle registration system is no different than Evans and C3 coming to Texas and physically taking Fowler's Morgan to Maine.

26.     Based on Fowler's affidavit along with Evans' and C3's actions demonstrate that this Court has specific jurisdiction over Evans and C3.

### B. General Jurisdiction

27.     In addition to specific jurisdiction, this Court has general jurisdiction over C3.

28.     General jurisdiction "exists when a non-resident defendant's contacts with the forum state are substantial, continuous, and systematic." *Johnston v. Multidata Systems International Corp.,* 523 F.3d at 609 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 1872-74, 80 L.Ed.2d 404 (1984)).

29.     For the court to make a finding that it has general personal jurisdiction, the plaintiff must demonstrate contacts of a more extensive quality and nature between the forum state and the defendant than those needed to support specific jurisdiction.  *Dalton v. R & W Marine,* 897 F.2d 1359, 1362 (5th Cir. 1990). "To exercise general jurisdiction, the court must determine whether 'the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction.' " *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 777 (5th Cir. 1986) (quoting *Stuart v. Spademan,* 772 F.2d 1185, 1191 (5th Cir. 1985)).

30.     A nonresident that directs marketing efforts to Texas in the hope of soliciting sales is subject to suit here in disputes arising from that business. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005).

*See also Moki Mac River Expeditions v. Drugg*, 221 S.W.3d at 576; *Siskind v. Villa Found, for Educ, Inc*., 642 S.W.2d 434, 436 (Tex. 1982).

      31.    Here, C3 Racing d/b/a The New England Classic Car Company not only advertised the Morgan at issue in this case for three full months in Hemmings Motor News, it has advertised on a regular and continuous basis in Texas going back as far as 2005. (Affidavit of Mary Brott).

      32.    Under a general personal jurisdiction analysis, C3 has purposefully availed itself of the privilege of advertising hundreds of cars for sale to Texas residents, thus invoking the benefits and protections of the laws of Texas. Those extensive advertising activities justify the conclusion that C3 could reasonably anticipate being haled into a Texas court, hence giving this court personal general jurisdiction over C3.

### III.    Objections to Evans' Declarations

      33.    Evans' declarations that accompany his motion are fatally defective; hence, the Court should not consider these statements in support of the Motion to Dismiss.

      34.    Federal Rule of Civil Procedure 56(e)(1) provides that " [a] supporting . . . affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify

on the matters stated." *E.E.O.C. v. Air Liquide USA LLC*, 692 F.Supp.2d 658, 666 (S.D.Tex. 2010) (citing FED.R.CIV.P. 56(e)(1)).

35.     In both Connecticut and Texas, supporting and opposing affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  *Kerlin v. Arias,* 274 S.W.3d 666, 668 (Tex. 2008) (per curiam) (Citing TEX.R.CIV.P. 166a(f)); *See also Cogswell v. American Transit Ins. Co.*, 923 A.2d 638, 657, 282 Conn. 505, 534 (2007)(citing Connecticut Practice Book §17-46).

36.     In Connecticut – where Evans' document was purportedly executed – Connecticut General Statutes §1-34 requires sworn affidavits to comply with the following:

> An officer taking the acknowledgment shall endorse thereon or attach thereto a certificate substantially in one of the following forms:
>
> (1) By an individual:
> On this the .... day of ...., 20.., before me, ...., the undersigned officer, personally appeared ...., known to me (or satisfactorily proven) to be the person whose name .... subscribed to the within instrument and acknowledged that .... he .... executed the same for the purposes therein contained.
>
> In witness whereof I hereunto set my hand.
>
> (2) By a corporation:
> On this the .... day of ...., 20.., before me, ...., the undersigned officer, personally appeared .... who acknowledged himself to be the .... of ...., a corporation, and that he, as such ...., being authorized so to do,

executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as ....

In witness whereof I hereunto set my hand."

Connecticut General Statutes §1-34

37.     In lieu of a sworn affidavit, an "unsworn declaration, certificate, verification, or statement, in writing, of [a] person which is subscribed by him, as true under penalty of perjury, and dated" is permitted and has the same force and effect as an affidavit or other sworn statement. 28 U.S.C. § 1746; *see also Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002) (although an affidavit requires the affiant to swear to its contents in front of an officer authorized to administer oaths, 28 U.S.C. § 1746 permits "unsworn declarations under penalty of perjury" to support any matter that legally requires an affidavit to support it).

38.     If executed in the United States, the statute requires that

If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

28 U.S.C. § 1746(2)

39.     Here, Evans' document entitled "Affidavit" is offered in support of his Motion to Dismiss that this Court has no personal jurisdiction over him or his company C3 Racing. But Evans' document is legally defective under both Connecticut and Texas law as well as federal statutes.

40.     Specifically, Evans' document in support of his Motion to Dismiss fails to contain endorsements from Evans' attorney Richard Raphael as required under Connecticut law.  Moreover, it is unclear from the document whether Evans is offering these statements in his individual capacity or as an officer of C3 Racing.  Hence, under Connecticut law, Evans' statements do not qualify as sworn evidence that the Court should consider.

41.     Evans' document also fails on all counts when applying a sworn affidavit's requirements using Texas or Connecticut law. That is because the only representation that Evans makes about the truth of his statements is that he "believes in the obligation of an oath." To have probative value under Texas or Connecticut law, an affiant "must swear that the facts presented in the affidavit reflect his personal knowledge." *Kerlin v. Arias,* 274 S.W.3d at 668 (citing *In re E.I. DuPont de Nemours and Co.*, 136 S.W.3d 218, 224 (Tex. 2004)); *See also Cogswell v. American Transit Ins. Co.*, 923 A.2d at 657. An affiant's belief is legally insufficient. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996). Moreover, an affidavit showing no basis for personal knowledge is legally insufficient. *Humphreys v. Caldwell,* 888 S.W.2d 469, 470 (Tex. 1994); *Radio Station KSCS v. Jennings,* 750 S.W.2d 760, 762 (Tex. 1988); *See also Cogswell v. American Transit Ins. Co.*, 923 A.2d at 657.

42.     Even though federal law permits an unsworn declaration to have the same force and effect as an affidavit, Evans and C3 have not complied with the requirements of 28 U.S.C. § 1746 in order for the Court to consider these statements as evidence. Here, Evans' failure to declare under penalty of perjury that the statements offered as evidence are true and correct should lead the Court to conclude that these statements should not be considered as probative evidence in support of Evans' and C3 Racing's Motion to Dismiss.

## CONCLUSION

Given Evans' and C3 Racing's specific conduct in the conversion, theft, and slander of title to Fowler's Morgan – which has been in Texas for over seven years – along with C3 Racing's continuous contacts with Texas residents through its advertising of hundreds of cars in Texas publications over many years; this Court should conclude that it has both specific or general jurisdiction over these Defendants.  For these reasons, Evans' and C3 Racing's Motion to Dismiss should be denied.

Respectfully Submitted

By: _Victor Elgohary_____

Victor Elgohary
Attorney for Plaintiff
State Bar No. Bar 24067587
6406 Arcadia Bend Ct.
Houston, Texas 77041-6222
Phone (281) 858-0014
victor@vselgohary.com

<u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of foregoing document has been

forwarded to the following:

Randall O. Sorrels
ABRAHAM, WATKINS, NICHOLS,
SORRELS, AGOSTO & FRIEND
800 Commerce Street
Houston, Texas 77002
*Facsimile: 713-225-0827*
Email: rsorrels@abrahamwatkins.com

on this 23rd day of July 2015.

_____
VICTOR ELGOHARY